UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**UNITED STATES OF AMERICA**        )
                                    )   CRIMINAL NO. 05-10110-MLW
        v.                          )
                                    )
**BURDLEY JEAN, et al.**            )
_____)

UNITED STATES' TRIAL MEMORANDUM

The United States of America submits this memorandum to provide the Court a general overview of the government's case-in-chief. The purpose of this memorandum is not to provide an exhaustive recitation of the evidence the government intends to offer at trial, but rather to highlight for the Court principal aspects of the upcoming trial.

OFFENSES CHARGED

Of the ten defendants charged in this case, four have pleaded guilty – Jean Noriscat, Shavonne Noble, James Robert Normil, and Tyamisha Tavares and one – Steven Marcelin – has absconded. The remaining five defendants are scheduled to go to trial on January 14, 2008. Each is charged with conspiracy to commit bank fraud, under 18 U.S.C. § 371, and with one or more substantive counts of bank fraud, under 18 U.S.C. § 1344. The superseding indictment also contains a criminal forfeiture allegation seeking forfeiture of property constituting or derived from the fraud scheme charged in this case.

The scheme charged in the superseding indictment is fairly simple. The superseding indictment alleges that defendant Jean devised a scheme to defraud banks by obtaining or creating counterfeit checks using the account information of legitimate bank customers. Jean and other defendants recruited "runners," i.e. persons who physically entered banks to cash checks. Several of the defendants charged in this case, in addition to uncharged co-conspirators,

acted as runners. As part of the conspiracy and scheme to defraud, runners were paid from the proceeds of the fraudulent checks.

In 2004, Jean recruited two employees of Fleet Bank (now Bank of America) – defendants Dumornay and Celestin – to participate in the conspiracy. Bank records show that Dumornay and Celestin accessed numerous of the defrauded accounts via their computers during the life of the conspiracy. In each instance, according to bank records, these defendants accessed information concerning the account's authorized signor, the amounts of the last several checks drawing on each account, the most recently used check numbers in each account, and each account's balance. Since this information was the same information that was available to tellers to whom counterfeit checks would be presented, it allowed the conspirators to create counterfeit checks that would appear to the teller to be legitimate.

In most instances, Dumornay and/or Celestin looked at this information in the days immediately before the counterfeit checks were cashed. In several instances, they also looked at this information on the day the checks were being cashed, or thereafter (presumably to track the success of the fraud). In a few instances, they looked at this information exclusively after the fraud occurred. Dumornay and Celestin also spent time searching for account information – querying many other accounts, apparently in an effort to find appropriate targets.

## ELEMENTS OF THE OFFENSES

I.   Conspiracy

The elements of conspiracy (18 U.S.C. § 371) are:

1.  That the agreement to violate a federal law as specified in the Indictment existed between at least two individuals;

2.  That the defendant willfully joined in that agreement; and

   3.  That one of the conspirators committed an overt act in an effort to further the purpose of the conspiracy.

 See First Circuit Pattern Jury Instructions (Criminal) §403; United States v. Piper, 35 F.3d 611, 614-15 (1st Cir. 1994).

II. Bank Fraud

 The bank fraud statute (18 U.S.C. § 1344) provides, in relevant part:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice
>
>  (1) to defraud a financial institution; or
>
>  (2) to obtain any of the moneys, funds, credits, assets, securities or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises [shall be guilty of a felony]

 The elements of this offense are:

   1.  Defendant executed or attempted to execute;

   2.  A scheme to defraud a federal financial institution, or to obtain money from a financial institution by false or fraudulent pretenses, representations or promises;

   3.  the scheme involved material falsehoods; and

   4.  The defendant acted knowingly; and

   5.  The financial institution was covered by the definition of that term in Title 18, United States Code, Section either federally chartered or insured.

See United States v. Kenrick, 221 F.3d 19, 30 (1st Cir. 2000); United States v. Brandon, 17 F.3d 409, 424 (1st Cir. 1994). See also Neder v. United States, 527 U.S. 1, 25 (1999) ("[M]ateriality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes.").

 Under Section 1344, the terms "scheme" and "artifice" include "any plan, pattern or c[our]se of action, including false and fraudulent pretenses and misrepresentations, intended to

3

deceive others in order to obtain something of value, such as money, from the institution to be deceived."  United States v. Goldblatt, 813 F.2d 619, 624 (3rd Cir. 1987); accord United States v. Cloud, 872 F.2d 846, 850 (9th Cir. 1989), cert. denied, 493 U.S. 1002 (1989).

There is no single definition of a scheme to defraud.  As the First Circuit has noted:

> "The term 'scheme to defraud' . . . is not capable of precise definition.  Fraud instead is measured in a particular case by determining whether the scheme demonstrated a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community."

Brandon, 17 F.3d at 424 (quoting United States v. Goldblatt, 813 F.2d 619, 624 (3d Cir. 1987)).

The intent to defraud that is required for a violation of Section 1344 "is an intent to deceive the bank in order to obtain from it money or other property."  Kenrick, 221 F.3d at 30.  Such fraudulent intent may be proved by circumstantial evidence, and may be established by inference from the evidence of the scheme itself.  Brandon, 17 F.3d at 425 (citing United States v. Cloud, 872 F.2d 846, 852 n.6 (9th Cir. 1989)).  See also United States v. Mason, 902 F.2d 1434, 1442 (9th Cir.1990) ("Specific intent is established by 'the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension, and this intention is shown by examining the scheme itself.'") (citation and internal quotation omitted), quoted in Brandon, 17 F.3d at 425.

The United States is not required to prove that the defendant intended to harm any financial institution or that any financial institution suffered a loss as a result of defendant's actions.  As the First Circuit has ruled, "the intent element of bank fraud under either subsection [of 18 U.S.C. §1344] is an intent to deceive the bank in order to obtain from it money or other property."  United States v. Kenrick, 221 F.3d 19, 29 (1st Cir. 2000).  Specifically, the Court noted, "'Intent to harm' is not required."  Id.

4

While the government must prove beyond a reasonable doubt that the defendant acted with intent to defraud, the government is not required to prove that the defendant knew that the lenders were federally insured.  As the First Circuit has noted, "The status of the victim-institution is not a separate knowledge element of bank fraud under § 1344 but an objective fact that must be established in order for the statute to apply."  Brandon, 17 F.3d at 425 (rejecting defendant's contention "that the government must prove that they knew that the victim of their fraud was a federally insured financial institution").

Nor is the government required to prove that the defendant knew which bank he was defrauding.  See Brandon, 17 F.3d at 426  (holding that " it is . . . unnecessary for the government to prove that a defendant knows which particular bank will be victimized by his fraud as long as it is established that a defendant knows that a financial institution will be defrauded.").

Aiding and Abetting Liability

The aiding and abetting statute defines the crime of aiding and abetting as follows:

 (a)    Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b)    Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. §2.

ANTICIPATED EVIDENCE

Without providing an exhaustive recitation of the evidence the government anticipates presenting, the following are the categories of evidence that, at this time, the government

5

anticipates presenting. As the government prepares for trial, additional categories of evidence may become apparent.

I.   TESTIMONY

The United States anticipates calling both runners who participated in the scheme and individuals who recruited runners. The United states also intends to call FBI agents who will testify to admissions made by defendant Edouard concerning his role in fraud scheme. The United States also plans to call bank employees, including an employee who aided and abetted defendant Jean in cashing counterfeit checks and an employee who will describe the jobs held at Fleet Bank by defendants Dumornay and Celestin. The United States will call other witnesses whose assistance the defendants sought to enlist in furtherance of the fraud. The United States will call police officers who apprehended defendants Jean and Noriscat in possession of incriminating evidence. In addition, to the extent necessary, keepers of records will authenticate the documentary evidence to be offered by the United States, including bank and telephone records.

II.  EXHIBITS

The United States anticipates introducing documentary, photographic, audio, and real evidence, including, but not limited to, the following:

   A.   Checks cashed as part of the scheme. Such checks will include checks not expressly charged in the indictment. Such checks are direct evidence of the scheme to defraud.

   B.   Bank records, including records showing access by Dumornay and Celestin (the bankers) to defrauded accounts.

   C.   Telephone records showing communication between defendant Jean and the bankers in furtherance of the conspiracy.

   D.   Bank surveillance photographs depicting runners cashing counterfeit checks.

  E. Evidence seized from an automobile driven by defendant Jean on June 18. 2003.

  F. Summary exhibits demonstrating the links between telephone conversations between defendant Jean and the bankers, access to defrauded accounts by the bankers, and the cashing of counterfeit checks purportedly drawn on those defrauded accounts.

  G. Bank Insurance Certificates:  To satisfy the jurisdictional prerequisite for the bank fraud charges, the United States anticipates offering FDIC certificates reflecting the insured status of the lending institutions at issue in this case.  Such documents are ordinarily under seal and self-authenticating.

  H. Audio recordings and transcripts of such recordings of conversations between defendants Noriscat and Jean.  *See* III.A. below.

### III. TRIAL ISSUES

  A. <u>Tape Recorded Conversations</u>

The United States has obtained copies of recorded telephone conversations between defendants Burdley Jean and Jean Noriscat.  Copies of these recordings have been provided to defense counsel.  The United States is in the process of selecting/excerpting conversations that are relevant to the charges in this case.  Certain of these conversations are in French or Haitian Creole, thus the government may require an interpreter to translate the dialogue into English.  The government intends to prepare transcripts of excerpts it intends to present at trial and will seek a stipulation from the defendants that the transcripts accurately represent the substance of the conversations.

  B. <u>404(b) Evidence</u>

The United States has not yet determined what, if any, evidence it anticipates offering under Federal Rule of Evidence 404(b).  In the event the United States proposes to offer any such

evidence, it will disclose it to the defendants by December 21, 2007, in accordance with the Court's Pretrial Order (August 7, 2007).

                                Respectfully submitted,

                                MICHAEL J. SULLIVAN
                                United States Attorney

By:    /s/ John A. Capin
                                JOHN A. CAPIN
                                Assistant U.S. Attorney
                                (617) 748-3264

## CERTIFICATE OF SERVICE

I, John A. Capin, Assistant U.S. Attorney, do hereby certify that I have, on November 26, 2007, caused a true and accurate copy of the foregoing to be served upon all counsel of record by filing the document with the Court electronically.

                                /s/ John A. Capin

                                JOHN A. CAPIN
                                Assistant U.S. Attorney