UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                      )
**UNITED STATES OF AMERICA**          )
                                      )    CRIMINAL NO. 05-10110-MLW
     **v.**                           )
                                      )
**BURDLEY JEAN, et al.**              )
_____)

**MOTION IN LIMINE TO ADMIT STATEMENTS BY DEFENDANT
DUCARMEL EDOUARD UNDER FED. R. EVID. 801(d)(2)(A)**

The United States of America hereby moves in limine to admit, under Fed. R. Evid. 801(d)(2)(A), statements by Ducarmel Edouard concerning his role in the check-cashing scheme charged in the superseding indictment. The government intends to present testimony that Edouard confessed to engaging in a number of transactions in which he cashed counterfeit checks with the assistance of other individuals. Edouard's admissions fall squarely within the category of codefendant statements the Supreme Court and First Circuit have held to be admissible. See Richardson v. Marsh, 481 U.S. 200 (1987); United States v. Vega Molina, 407 F.3d 511 (1st Cir. 2005).

**I.     BACKGROUND**

**A.     Facts**

The indictment charges each of the defendants with conspiracy and bank fraud in connection with a large-scale scheme to cash counterfeit checks. The indictment alleges that defendant Burdley Jean originally devised the scheme and that defendant Edouard acted as a "runner," i.e. a person who physically entered banks to cash checks. As part of the scheme, defendants Burdley Jean, Anderson Demosthenes, and Jean Noriscat recruited several runners, including defendants Edouard, Shavone Noble, and Tyamisha Tavares. Other runners,

uncharged in the indictment, also participated in the scheme; several will testify at trial.  As part of the conspiracy, runners were paid from the proceeds of the fraudulent checks.

### B. Edouard's Confession

In admissions he made to FBI agents, Edouard stated the following:[1]

Another individual asked Edouard if he was interested in making money by cashing checks, which Edouard understood to be illegal.  In May 2003, Edouard cashed four checks over a short period of time.  He traveled to the banks with another individual, cashed the checks, and gave the cash to someone afterward.  Another individual paid Edouard 20% of the value of the checks he cashed.  In order to improve his chances of success, Edouard dressed professionally, stayed calm, targeted young female tellers, and prepared a cover story in which he was a real estate sales professional.  In 2004, Edouard was contacted again and agreed to cash more checks.  Edouard was shown copies of 13 counterfeit checks payable to him, and agreed that in 2004 he cashed each one of them.  With regard to several of those checks, Edouard identified himself in surveillance photographs depicting the person cashing the checks.  In 2004, instead of going with someone else to cash the checks, Edouard was allowed to do so on his own.  He was given a location where he could pick up the counterfeit checks and then drop off the proceeds when finished.

### II. ARGUMENT

"There is a preference in the federal system for joint trials of defendants who are indicted together."  Zafiro v. United States, 506 U.S. 534, 537 (1993).  "Joint trials 'play a vital role in

---

[1] The statements by Edouard, as set forth herein, have been redacted to omit reference to any particular codefendant.

the criminal justice system.'  Id.  (quoting Richardson v. Marsh, 481 U.S. 200, 209 (1987)).  "They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Id. (citation and internal quotation marks omitted).  Separate trials are not warranted unless there is a serious risk that it will compromise a specific trial right.  Id. at 539.  The preference for joint trails is strong even when facing a potential Confrontation Clause problem.  See, e.g., United States v. Cleveland, 590 F.2d 24, 28-29 (1st Cir. 1978)(Persons indicted together with joint participation in a crime have a heavy burden to show substantial prejudice if they do not wish to be tried together) .

Admission of Edouard's self-incriminating statements, which are admissible against him under Federal Rule of Evidence 801(d)(2)(A), would not run afoul of the proscription against the introduction of statements that are "powerfully incriminating" vis-à-vis a jointly tried codefendant.  See Bruton v. United States, 391 U.S. 123, 135 (1968).  In Bruton v. United States, 391 U.S. 123 (1968), the Supreme Court held that, because of the substantial risk that a jury, despite contrary instructions, will look to a codefendant's incriminating extrajudicial statement in determining a defendant's guilt, admission of the codefendant's statement in a joint trial violates the defendant's right of cross-examination under the Confrontation Clause of the Sixth Amendment.  391 U.S. at 126; United States v. Smith, 46 F.3d 1223, 1227-28 (1st Cir. 1995).  The Supreme Court later refined the holding in Bruton to clarify that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." Richardson v. Marsh, 481 U.S. 200, 208 (1987).  The Court in Richardson explained that although the defendant was linked to the

statement by other properly admitted evidence, the statement did not run afoul of Bruton because " the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial." Id. at 208. The Court distinguished Bruton wherein the codefendant's confession " 'expressly incriminated' the defendant as his accomplice." Id. (quoting Bruton, 391 U.S. at 124 n. 1).

The First Circuit has recognized that Bruton does not prevent admission of a codefendant's statements where, as is the case with Edouard's statements, they have been redacted to omit express reference to the defendant:[2]

> As the Court emphasized in Richardson v. Marsh, 481 U.S. 200, 208, 107 S.Ct. 1702, 1707-08, 95 L.Ed.2d 176 (1987), Bruton error occurs where the codefendant's statement " 'expressly implicate[s]' " the defendant, leaving no doubt that it would prove " 'powerfully incriminating' " (quoting Bruton, 391 U.S. at 124 n. 1, 135, 88 S.C. at 1622 n. 1, 1628). There is no Bruton error if the statement becomes incriminating "only when linked with evidence introduced ... at trial." Richardson, 481 U.S. at 208, 107 S.C. at 1707. See United States v. Limberopoulos, 26 F.3d 245, 253 (1st Cir.1994) (Bruton protects against the "powerfully incriminating effect of [a nontestifying] accomplice pointing the finger directly at another"; by contrast, "inferential incrimination ... can be cured by limiting instructions").

United States v. Smith, 46 F.3d 1223, 1227-28 1st Cir. 1995).

More recently, the First Circuit explained that "application of Bruton, Richardson, and Gray to redacted statements that employ phraseology such as 'other individuals' or 'another person' requires careful attention to both text and context, that is, to the text of the statement itself and to the context in which it is proffered." Vega Molina, 407 F.3d at 520.

---

[2]Because the proposed testimony concerning Edouard's statements will not suggest that any portion of the statements has been redacted, this case does not implicate the Supreme Court's holding in Gray v. Maryland, 523 U.S. 185, 188 (1998)(holding that redactions that simply replace a name with an obvious blank space or other indication of alteration fall under the Bruton rule rather than the Richardson limitation.)

> The mere fact that the other defendants were on trial for the same crimes to which the declarant confessed is insufficient, in and of itself, to render the use of neutral pronouns an impermissible means of redaction. A particular case may involve numerous events and actors, such that no direct inference plausibly can be made that a neutral phrase like "another person" refers to a specific codefendant. See, e.g., United States v. Sutton, 337 F.3d 792, 799-800 (7th Cir.2003). A different case may involve so few defendants that the statement leaves little doubt in the listener's mind about the identity of "another person." See, e.g., United States v. Vejar-Urias, 165 F.3d 337, 340 (5th Cir.1999). In short, each case must be subjected to individualized scrutiny.

Id. at 520-21.

In Vega-Molina, the court concluded that admission of the codefendant's confession did not violate Bruton, because, *inter alia*, the testimony concerning the confession "failed to convey a compelling inference that the 'other individuals' to whom the confession referred were parties to the case. Id. at 521. Because the statement itself did not suggest the codefendants' guilt, the First Circuit held that "it was not so powerfully incriminating as to bring the Bruton proscription to bear." Id. (Citation to Richardson omitted.).

Likewise, in this case, the admission of Edouard's confession in no way conveys a compelling inference that any other person to whom Edouard referred in his confession is a defendant in this case, much less a particular defendant in this case. To the contrary, the jury will hear evidence of a scheme involving ten defendants and several other participants not charged in this case. There is no significant danger that the jury will infer that references to "another individual" in Edouard's statement expressly implicates a codefenant.

## **CONCLUSION**

For the foregoing reasons, the Court should admit, pursuant to Fed. R. Evid. 801(d)(2)(A), testimony regarding Edouard's admissions.

                Respectfully submitted,

                MICHAEL J. SULLIVAN
                United States Attorney

By:   /s/ John A. Capin

           JOHN A. CAPIN
           Assistant U.S. Attorney
           (617) 748-3264

## CERTIFICATE OF SERVICE

I, John A. Capin, Assistant U.S. Attorney, do hereby certify that I have, on November 26, 2007, caused a true and accurate copy of the foregoing to be served upon all counsel of record by filing the document with the Court electronically.

            /s/ John A. Capin

            JOHN A. CAPIN
            Assistant U.S. Attorney